UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| | : | |
| v. | : | Case No.  1:21-cr-00738-BAH |
| | : | |
| MICHAEL OLIVERAS, | : | |
| | : | |
| Defendant. | : | |

MOTION IN LIMINE TO PRECLUDE ARGUMENTS AND
EVIDENCE ABOUT ALLEGED LAW ENFORCEMENT PERMISSIVENESS OR
INACTION

The government respectfully requests that the Court issue an order precluding Defendant Michael Oliveras from any of the following: (1) arguing any entrapment by estoppel defense related to law enforcement; (2) offering evidence or argument concerning any claim that by allegedly failing to act, law enforcement made the defendants' entry into the United States Capitol building or grounds or their conduct therein lawful; or (3) arguing or presenting evidence of alleged inaction by law enforcement unless the defendant specifically observed or was otherwise aware of such conduct.

I.      **Factual Background**

Upon his arrest in this case, in describing his breach of the Capitol to the FBI, Oliveras claimed that "the Capitol Police let us in" the Capitol. Nothing could be further from the truth.

Prior to his entry into the United States Capitol, Oliveras was on the Northwest lawn in front of the inaugural stage as rioters attempted to breach the police line there. *See* https://web.archive.org/web/submit?url=https://video.parler.com/fQ/4i/fQ4iudBd3wIe.mp4 at 0:03. Oliveras was also present on the Northwest lawn at approximately 2 p.m. There, he witnessed violent confrontations as a unit of the D.C. Metropolitan police, Civil Disturbance

Unit 42, attempted to advance through the crowd of rioters to respond to a distress call from police officers defending the Lower West Terrace. Oliveras yelled at the police as rioters fought the police and threw items at them.





*See* https://www.dropbox.com/s/0ntod03nka61hoj/IMG_7094%202.h264.mp4?dl=0

Oliveras joined in the confrontation by pressing other rioters into officers.



*See* https://archive.org/download/cxBcvdEiZHWpaxd5N/William_Turton_201_a_crow.mpeg4 at 0:30.



At approximately 2:03 p.m., on the Lower West Terrace, a short distance from the Northwest lawn where Oliveras was engaged with the crowd of rioters who were fighting the police, the MPD was issuing over a loudspeaker a "dispersal order" telling all people to leave the area. The loudspeaker announces the message:

> This area is now a restricted access area pursuant to D.C. Official Code 22-1307(b). All people must leave the area immediately. This order may subject you to arrest and may subject you to the use of a riot control agent or impact weapon.

Despite the violent assaults on law enforcement occurring around Oliveras, and the obvious efforts to repel the rioters, Oliveras did not leave.

Oliveras climbed bicycle racks, which had been staged to prevent rioters from accessing the Capitol, to access the Northwest stairs where rioters overran the police.



The Senate Wing area through which Oliveras gained entry to the U.S. Capitol building was breached at approximately 2:12 pm by rioters breaking through a window as the Capitol Police tried to repel them.



At approximately 2:22 p.m., Oliveras entered the U.S. Capitol building through the Senate Wing door, where signs of a violent entry were present with people entering the Capitol by climbing through broken windows, there was glass on the floor, and a loud alarm was blaring from the fire door through which he was entering. Oliveras did not pass-through security and there was no indication that this was a legitimate entryway to the U.S. Capitol building.



Once inside of the Capitol Building, Oliveras went to the Crypt. Oliveras exited the building through the Senate Wing window at approximately 2:41 p.m. as the police directed him to leave. Simultaneously they barricaded the Senate Wing door.



8

The rioters overran the police again at the Senate Wing door and breached that door at approximately 2:47 p.m.



Just three minutes later, Oliveras entered the Capitol Building a second time through the Senate Wing door at approximately 2:50 p.m. He then stood inside the door waving his flag and exited the building after 2 minutes.

9



Oliveras returned to the Senate Wing door a third time with other rioters and tried to enter the Capitol. Oliveras narrated his recording and stated, "Here we go. Here's the next rush. There's a push inside, with resistance." *See* Exhibit 1, a screen shot of which is shown below.



Those resisting the rioters from inside to which Oliveras referred to in his video were the police.



In another of Oliveras' videos that Oliveras recorded during the third attempted breach, he captured protesters and the police at the Senate Wing door, while the fire alarm from the door blared. A rioter yelled, "Whose house? Our House" while Oliveras yelled "We want those fucking traitors!" He also instructed others to "push!" *See* Exhibit 2, a screenshot of which is shown below.



In sum, Oliveras 'own recordings and words establish that he has no basis to assert that the police let him into the Capitol.

## II. This Court Should Preclude Oliveras from Arguing Entrapment by Estoppel.

Oliveras should be prohibited from making arguments or attempting to introduce evidence that law enforcement gave him permission to enter the U.S. Capitol. "To win an entrapment-by-estoppel claim, a defendant criminally prosecuted for an offense must prove (1) that a government agent actively misled him about the state of the law defining the offense; (2) that the government agent was responsible for interpreting, administering, or enforcing the law defining the offense; (3) that the defendant actually relied on the agent's misleading pronouncement in committing the offense; and (4) that the defendant's reliance was reasonable in light of the identity of the agent, the point of law misrepresented, and the substance of the

13

misrepresentation." *United States v. Chrestman*, 525 F. Supp. 3d 14, 31 (D.D.C. 2021) (emphasis added) (*quoting United States v. Cox*, 906 F.3d 1170, 1191 (10th Cir. 2018)).

In *Chrestman*, this Court rejected an entrapment by estoppel argument raised by a January 6th defendant charged with, inter alia, violations of 18 U.S.C. §§ 1512(c)(2), 1752(a)(1) and (b)(1)(A) and 1752(a)(2) and (b)(1)(A). Although *Chrestman* involved an argument that former President Trump gave the defendant permission to enter the Capitol building, the reasoning in *Chrestman* applies equally to an argument that a member of law enforcement gave permission to the defendants to enter the Capitol building. As this Court noted, Supreme Court precedent "unambiguously forecloses the availability of the defense in cases where a government actor's statements constitute 'a waiver of law' beyond his or her lawful authority." *Chrestman*, 525 F. Supp. 3d at 32 (*quoting Cox v. Louisiana*, 379 U.S. 559, 569 (1965)).

Just as "no President may unilaterally abrogate criminal laws duly enacted by Congress as they apply to a subgroup of his most vehement supporters," no member of law enforcement could use his authority to allow individuals to enter the Capitol building during a violent riot, and after "obvious police barricades, police lines, and police orders restricting entry at the Capitol" had already been put in place by the United States Capitol Police and the Secret Service. *Id*. at 32. This Court recently concluded that "the logic in *Chrestman* that a U.S. President cannot unilaterally abrogate statutory law applies with equal force to government actors in less powerful offices, such as law enforcement officers protecting the U.S. Capitol Building." Memorandum and Order, *United States v. Williams*, No. 21-cr-377-BAH, at *2 (D.D.C. June 8, 2022).

Even if Oliveras could establish that a member of law enforcement told him that it was

14

lawful to enter the Capitol building or allowed him to do so, his reliance on any such statement would not be reasonable in light of the "obvious police barricades, police lines, and police orders restricting entry at the Capitol." *Chrestman*, 525 F. Supp. 3d at 32. Moreover, Oliveras's actions belie any argument that he actually relied on any such statement by law enforcement when he made a decision to unlawfully enter the Capitol building through a door broken open alongside rioters climbing through broken windows, in the face of the police who once escorting him out of the Capitol.  Oliveras then reentered the Capitol a second time and was prevented from advancing through it by the police and then tried a third time, when he was rebuffed by the police.

### III. This Court Should Preclude Oliveras from Arguing that Alleged Inaction by Law Enforcement Officers Made His Conduct on January 6, 2021, Legal.

In addition to prohibiting any defense argument that law enforcement actively communicated to Oliveras that entering the Capitol building or grounds was lawful, the Court should also bar Oliveras from arguing that any failure to act by law enforcement rendered his conduct legal. The same reasoning that applied in *Chrestman* applies here. That is, like the Chief Executive, a Metropolitan Police Officer or Capitol Police Officer cannot "unilaterally abrogate criminal laws duly enacted by Congress" through his or her purported inaction. *Chrestman*, 525 F. Supp. 3d at 33. An officer cannot shield an individual from liability for an illegal act by failing to enforce the law or ratify unlawful conduct by failing to prevent it. Indeed, this Court expressly reached that conclusion in *Williams* recently. *Williams,* No. 21-cr-377-BAH, at *3 ("Settled caselaw makes clear that law officer inaction—whatever the reason for the inaction—cannot sanction unlawful conduct."). Under the same reasoning, Oliveras should be prohibited from

arguing that his conduct was lawful because law enforcement officers allegedly failed to prevent it or censure it when it occurred.

### IV. This Court Should Preclude Oliveras from Arguing or Presenting Evidence of Alleged Permissiveness by Law Enforcement Officers Unless He Specifically Observed or Was Otherwise Aware of Such Conduct.

The conduct of law enforcement officers may be relevant to Oliveras's state of mind on January 6, 2021. However, unless a defendant shows that, at the relevant time, he specifically observed or was otherwise aware of some alleged permissiveness by law enforcement, such evidence is irrelevant to the defendant's intent. Federal Rule of Evidence 401 states that evidence is relevant if it "has any tendency to make a fact more or less probable … and the fact is of consequence in determining the action." Fed. R. Evid. 401. Here, if Oliveras was not aware of law enforcement's alleged permissiveness at the time of his entry onto restricted grounds or into the Capitol building (or at the time he committed the other offenses charged in the Information), any alleged permissiveness would have no bearing on the defendant's state of mind and therefore would not meet the threshold for relevance. *See Williams*, No. 21-cr-377-BAH, at *3-4. The Court should therefore exclude testimony and evidence of any alleged permissiveness by the police as irrelevant, except to the extent the defendant shows that he specifically observed or was aware of the alleged permissiveness by the police when he committed the offenses charged in the information.

## CONCLUSION

For the reasons set forth herein, the government respectfully requests that this Court

preclude improper argument or evidence related to entrapment by estoppel, that law enforcement's alleged inaction rendered the defendant's actions lawful, and any evidence or argument relating to alleged permissiveness by law enforcement except to the extent that the defendant specifically observed or was otherwise aware of such conduct at the relevant time.

        Respectfully submitted,

        MATTHEW M. GRAVES
        UNITED STATES ATTORNEY
        D.C. Bar Number 481052

By:   /s/ Anthony L. Franks
       ANTHONY L. FRANKS
       Assistant United States Attorney
       Bar No. 50217MO
       555 Fourth Street, N.W., Room
       Washington, DC  20530
       anthony.franks@usdoj.gov
       (314) 539-3995

       */s/ Victoria A. Sheets*
       VICTORIA A. SHEETS
       NY Bar No. 5548623
       Assistant United States Attorney
       U.S. Department of Justice
       601 D Street NW
       Washington, DC 20530
       (202) 809-2050
       Victoria.Sheets@usdoj.gov

**CERTIFICATE OF SERVICE**

I hereby certify that on October 26, 2022, I caused a copy of the foregoing motion to be served on counsel of record via electronic filing.

/s/ *Anthony L. Franks*
Anthony L. Franks
Assistant United States Attorney