UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| | : | |
| v. | : | Case No. 1:21-cr-00738--BAH |
| | : | |
| | : | |
| MICHAEL OLIVERAS | : | |
| | : | |
| Defendant. | : | |

## GOVERNMENT'S NOTICE AND MOTION TO ADMIT EVIDENCE AS INTRINSIC EVIDENCE OR, IN THE ALTERNATIVE, AS "OTHER ACTS" EVIDENCE PURSUANT TO FEDERAL RULE OF EVIDENCE 404(b)

The United States of America hereby moves this Court to permit the government to introduce, during its case-in-chief at trial, intrinsic act evidence inextricably intertwined with the charged offenses. In the alternative, the government also hereby provides notice of its intent to introduce this "other acts" evidence to prove Michael Oliveras' (hereinafter, "defendant") motive, intent, and plan in his actions during the riot at the U.S. Capitol on January 6, 2021. *See* Fed. R. Evid. 404(b)(2).[1]

---

[1] Although the government is providing certain descriptions and specific examples of such evidence in this notice, this filing is intended to satisfy the government's obligation under Rule 404(b) to provide notice of the "general nature" of the crimes, wrongs, or other acts evidence that the government intends to admit at trial and is not an exhaustive list of the specific pieces of evidence that the government may offer in support of these areas of activity. Fed. R. Evid. 404(b)(2)(A). Rather, any information produced to the defense in discovery, to the extent it satisfies the rationales discussed in this motion, may be offered in the trial of this case as either intrinsic evidence or under Rule 404(b). Further, because the government continues to investigate Oliveras' charged crimes and uncover possible additional evidence and witnesses, it reserves the right to supplement and amend this notice as pre-trial investigatory developments dictate.

I.     **FACTUAL BACKGROUND**

At trial in this case, the United States expects the evidence to show the following:

**A. Defendant's protest on November 7, 2020**

1. In Philadelphia, Pennsylvania on November 7, 2020, four days after the 2020 Presidential election, defendant participated in a #StopTheSteal rally in support of former President Donald Trump.

2. Defendant was interviewed on camera during the rally. He wore his "Make America Great Again" cap and was visibly around those who supported President Donald Trump as the protestors displayed "Trump/Pence" signs and flags.



3.      Defendant stated the following in his interview.

Ready? Good afternoon, everyone. Good afternoon and good evening, America. My name is Michael Oliveras. I am down here in City Center Philadelphia at a stop the count protest on behalf of Donald Trump and the United States of America. We are here to proclaim our

3

democracy. We are here to take our democracy back. We are here to express to all the people in this country that we do not have illegal votes We count legal votes. We are a law-and-order country. We love our founding fathers. We love our Constitution. We love the framework and what its provided us here. Us to live our lives in peace. We come down here today to show our support on behalf of all the red-blooded Americans I've seen across the country in the past months.. We are here to let you know that we are with you nationwide, day and night, day after day. God bless the United States of America and let's take our Country back.

*See* Exhibit 1.

4. This video is intrinsic act evidence inextricably intertwined with the charged offenses. Alternatively, on February 6, 2022, the government served notice on counsel for the defendant of its intent "to admit this video at trial pursuant to FRE 404(b) to prove motive, intent, preparation, plan, absence of mistake or accident".

**B. The Attack at the U.S. Capitol on January 6, 2021**

5. The U.S. Capitol, which is located at First Street, SE, in Washington, D.C., is secured twenty-four hours a day by U.S. Capitol Police (USCP). Restrictions around the Capitol include permanent and temporary security barriers and posts manned by USCP. Only authorized people with appropriate identification are allowed access inside the Capitol.

6. On January 6, 2021, the exterior plaza of the Capitol was closed to members of the public.

7. On January 6, 2021, a joint session of the United States Congress convened at the Capitol, which is located at First Street, SE, in Washington, D.C. During the joint session, elected members of the United States House of Representatives and the United States Senate were meeting in the Capitol to certify the vote count of the Electoral College of the 2020 Presidential Election, which had taken place on Tuesday, November 3, 2020. The joint session began at approximately 1:00 PM. Shortly thereafter, by approximately 1:30 PM, the House and Senate adjourned to

separate chambers to resolve a particular objection. Vice President Mike Pence was present and presiding, first in the joint session, and then in the Senate chamber.

8. As the proceedings continued in both the House and the Senate, and with Vice President Pence present and presiding over the Senate, a large crowd gathered outside the Capitol. Temporary and permanent barricades, as noted above, were in place around the exterior of the Capitol, and USCP officers were present and attempting to keep the crowd away from the Capitol and the proceedings underway inside.

9. At approximately 2:00 PM, certain individuals in the crowd forced their way through, up, and over the barricades. Officers of the USCP were forced to retreat and the crowd advanced to the exterior façade of the building. The crowd was not lawfully authorized to enter or remain in the building and, prior to entering the building, no members of the crowd submitted to security screenings or weapons checks as required by USCP officers or other authorized security officials.

10. At such time, the certification proceedings were still underway, and the exterior doors and windows of the Capitol were locked or otherwise secured. Members of the USCP attempted to maintain order and keep the crowd from entering the Capitol; however, shortly after 2:00 PM, individuals in the crowd forced entry into the Capitol, including by breaking windows and by assaulting members of law enforcement, as others in the crowd encouraged and assisted those acts. The riot resulted in substantial damage to the Capitol, requiring the expenditure of more than $2.7 million dollars for repairs.

11. Shortly thereafter, at approximately 2:20 PM, members of the House of Representatives and of the Senate, including the President of the Senate, Vice President Pence, were instructed to—and did—evacuate the chambers. Accordingly, all proceedings of the United States Congress, including the joint session, were effectively suspended until shortly after 8:00

PM on January 6, 2021. In light of the dangerous circumstances caused by the unlawful entry to the Capitol—including the danger posed by individuals who had entered the Capitol without any security screening or weapons check—Congressional proceedings could not resume until after every unauthorized occupant had been removed from or left the Capitol, and USCP confirmed that the building was secured. The proceedings resumed at approximately 8:00 PM after the building had been secured. Vice President Pence remained in the Capitol from the time he was evacuated from the Senate Chamber until the session resumed.

### C. Oliveras' Participation in the January 6, 2021, Capitol Riot

12.     On January 5, 2021, defendant traveled from his home in Lindenwood, New Jersey to Washington, D.C., via automobile. The purpose of defendant's trip to Washington, D.C., was to protest Congress' certification of the Electoral College.

13.     On January 6, defendant attended the "Stop the Steal" rally and then marched with other protestors to the Capitol.

14.     At approximately 2:01 p.m., while on the Northwest lawn on Capitol Grounds, defendant yelled obscenities at D.C. Metropolitan Police officers who were surrounded by a crowd of rioters who were fighting with the officers. Defendant pushed rioters into the crowd that was engaged with the police and yelled "Hold the Line".

15.     At about approximately 2:22 p.m., defendant entered the Senate Wing Door after it was breached by rioters.

16.     Once inside of the Capitol Building, Defendant filmed a video where he stated, "Where are the fucking traitors? Drag them out by the fucking hair! Where are the fucking traitors?".

17. Defendant went to the Crypt, and exited the Capitol building through the Senate Wing door at approximately 2:41 p.m.

18. Defendant entered the Capitol Building a second time through the Senate Wing door at approximately 2:50 p.m. and stood inside the door within 2 minutes of rioters breaching the Senate Wing door and overrunning the police. Defendant stood inside the Capitol Building at the Senate Wing door and waved his flag. Defendant exited the building within 2 minutes of entering it.

19. Defendant presented back at the Senate Wing door with other rioters and yelled with them, "Fuck the Dems!" There, defendant also recorded protesters and the police. The police were trying to prevent the rioters from breaching the Capitol Building. Defendant narrated his recording and stated, "Here we go. Here's the next rush. There's a push inside, with resistance". Defendant also recorded rioters who were at the Senate Wing Door and who were screaming at the police, "Fight for Trump!", "Whose house? Our House. Defendant also yelled, "We want those fucking traitors!" The police later forced Defendant off the Northwest Terrace.

20. Defendant gathered with others around equipment (labeled as "AP") that had been left by the press on the east front of the Capitol Grounds. He recorded the scene and stated, "That's what happens when the fucking fake news shows up at a Patriot rally". He also said, "[f]ucking traitors. Get the fuck outta here!"

**D. Oliveras' Arrest and Charge**

21. The FBI arrested defendant on December 9. 2021 on a Complaint charging him with 18 U.S.C. §§ 1752(a)(1) and (2) (entering and remaining in a restricted building or grounds, and disorderly and disruptive conduct in a restricted building or grounds) and 40 U.S.C. §§

5104(e)(2)(D) and (G) (disorderly and disruptive conduct, and parading, demonstrating, or picketing in a capitol building). *See* ECF No. 5.

22. On December 9, 2021, after his arrest defendant knowingly and voluntarily consented to an interview with the FBI after the FBI informed defendant of his *Miranda* Rights and he signed the FBI's Advice of Rights form. In his interview, when asked what made him want to go to the Capitol, defendant said that he went because, "as a red-blooded patriot, I like millions of others, are aware that our government is corrupt and the 2020 election was stolen through corrupt, nefarious deeds and acts." He said he was there "to show support for our nation and our republic; not the United States of America, for the American Republic." Defendant also said that he was in a crowd who assembled at the Capitol because they knew that the "election was stolen and that our republic had been robbed of it sovereign ability and privilege to vote honestly for our Commander-in-Chief."

23. Defendant was charged on December 16, 2021 in a four-count information with violations of 18 U.S.C. §§ 1752(a)(1) and (2) (entering and remaining in a restricted building or grounds, and disorderly and disruptive conduct in a restricted building or grounds) (Counts One and Two); and 40 U.S.C. §§ 5104(e)(2)(D) and (G) (disorderly and disruptive conduct, and parading, demonstrating, or picketing in a capitol building) (Counts Three and Four). *See* ECF No. 7.

24. Defendant pleaded not guilty, and trial is scheduled for either February 20 or 27, 2023.

II.   **ARGUMENT**

Through this Notice and Motion, the government provides further notice of its intent to admit evidence of defendant's participation in the protest in Philadelphia, Pennsylvania on

November 7, 2021 related to the 2020 election. This evidence is intrinsic to the crimes charged in the information and also serves to establish, among other things, defendant's motive, intent, plan, and preparation.

### A. Evidence of Defendant's Motive, Intent, and Plan to Disrupt Congressional Business is Intrinsic Evidence of his Crimes

Direct evidence of a fact in issue is considered intrinsic to the offense and is admissible at trial. *See United States v. Alexander*, 331 F.3d 116, 126 (D.C. Cir. 2003). Such intrinsic evidence is distinguishable from character evidence, which is, of course, not properly admitted to prove that a person acted in accordance with that character. Federal Rule of Evidence 404(a)(1), 404(b)(1).

Here, defendant is charged with, among other things, Disorderly and Disruptive Conduct in a Restricted Building or Grounds, in violation of 18 U.S.C. § 1752(a)(2) and Disorderly Conduct in a Capitol Building, in violation of 40 U.S.C. § 5104(e)(2)(D). The elements of § 1752(a)(2) are as follows:

1. That the defendant engaged in disorderly or disruptive conduct in, or in proximity to, any restricted building or grounds;
2. That defendant did so knowingly, and with intent to impede or disrupt the orderly conduct of Government business or official functions; and
3. The defendant's conduct occurred when, or so that, his conduct in fact impeded or disrupted the orderly conduct of Government business or official functions.

*See United States v. Bledsoe*, 1:21-cr-00204-BAH, ECF 215, 9.

The elements of § 5104(e)(2)(D) are as follows:

1. The defendant engaged in disorderly or disruptive conduct in any of the United States Capitol Buildings;
2. The defendant did so with the intent to impede, disrupt, or disturb the orderly conduct of a session of Congress or either House of Congress; and
3. The defendant acted willfully and knowingly.

*See United States v. Bledsoe*, 1:21-cr-00204- BAH, ECF 215, 10.

To establish violations of both statutes, the government will have to prove that defendant's conduct was intended to impede, disrupt, or disturb the orderly conduct of Congress on January 6, 2021. In other words, for these charges, the government will have to show that defendant's participation in the Capitol riot was part of an intentional effort by defendant to either impede, disrupt, or disturb the business of Congress on January 6, 2021, which was the certification of the 2020 presidential election.

Defendant's participation at the November 7, 2020 #StopTheSteal rally four days after the 2020 Presidential election, and the statements that he made in his interview there, are direct evidence of defendant's intent to take action to disrupt the Congresses' business of counting what he deemed as "illegal votes" on January 6, 2021. Defendant proclaimed at the rally that he attended it "on behalf of Donald Trump and the United States of America." and that "[w]e are here to proclaim our democracy. We are here to take our democracy back." He went on to state the purpose of the rally -- "We are here to express to all the people in this country that we do not have illegal votes." This interview, just days after the presidential election shows that defendant was aware that the votes would eventually be tallied and it was important for him to protest to prevent the ones that he believed to be "illegal" from being used to certify the election results on January 6, 2021 in Congress. This evidence is thus relevant and admissible as intrinsic evidence of an element of both § 1752(a)(2) and § 5104(e)(2)(D)..

**B.      Other Acts Evidence is Admissible to Prove Motive, Intent, and Plan**

In the event that the Court determines that evidence of defendant's participation in the #StopTheSteal rally on November 7, 2021 contesting the legitimacy of the 2020 election results is not intrinsic, that evidence is admissible under Fed. R. Evid. 404(b) as probative of his motive, intent, and plan to protest at the Capitol on January 6, 2021 and disrupt Congresses' business on

January 6th. On January 6th, Congresses' business was to certify the presidential election, which was based upon the alleged "illegal votes" that defendant complained of on November 7, 2021.

Evidence of another crime, wrong, or act, is admissible provided it is not used to prove a person's character, to show propensity to commit the crime or act in a certain way. As the D.C. Circuit has summarized:

> Federal Rule of Evidence 404(b) authorizes admission of "[e]vidence of other crimes, wrongs, or acts" provided it is offered not "to prove the character of a person in order to show action in conformity therewith" but rather "for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident."

*United States v. Mahdi*, 598 F.3d 883, 891 (D.C. Cir. 2010).

Other acts evidence is properly admissible in the government's case-in-chief to anticipate a defendant's likely defense of lack of intent or knowledge; it need not be reserved for cross-examination or rebuttal. *See, e.g.*, *United States v. Brown*, 597 F.3d 399, 404 (D.C. Cir. 2010) (extrinsic evidence of defendant's "knowledge, motive, and the absence of mistake or accident" was admissible under Rule 404(b) "to show his specific intent to defraud"); *see also United States v. Inserra*, 34 F.3d 83, 90 (2d Cir. 1994) ("[Rule 404(b) other crimes evidence] is admissible during the Government's case-in-chief if it is apparent that the defendant will dispute that issue."); *United States v. Lewis*, 759 F.2d 1316, 1349 n.14 (8th Cir. 1985) ("It was not necessary for the government to await defendant's denial of intent or knowledge before introducing [Rule 404(b) other crimes] evidence; instead the government may anticipate the defense and introduce it in its case-in-chief").

A two-pronged test determines whether evidence of "other acts" is admissible under Rule 404(b). First, the evidence must be "probative of a material issue other than character." *United States v. Miller*, 895 F.2d 1431, 1435 (D.C. Cir. 1990); *see also United States v. Douglas*, 482 F.3d 591, 596 (D.C. Cir. 2007) ("A proper analysis under Rule 404(b) begins with the question of relevance: is the other crime or act relevant and, if so, relevant to something other than the

11

defendant's character or propensity [to commit crime]?"). Second, the evidence is subject to the balancing test of Rule 403, so that it is inadmissible only if the prejudicial effect of admitting the evidence "substantially outweighs" its probative value. *Miller*, 895 F.2d at 1435; *see also United States v. Lerma-Plata*, 919 F. Supp. 2d 152, 156 (D.D.C. 2013).

### 1) Defendant's Participation at the #StopTheSteal Rally is Probative of Motive, Intent, and Plan and Not Unduly Prejudicial

With respect to the first factor, it is significant that, "under Rule 404(b), *any* purpose for which bad-acts evidence is introduced is a proper purpose so long as the evidence is not offered *solely* to prove character." *Miller*, 895 F.2d at 1436 (emphasis in original). In other words, Rule 404(b) "is a rule of inclusion rather than exclusion" and it is "quite permissive, excluding evidence only if it is offered for the sole purpose of proving that a person's actions conformed to his or her character." *United States v. Long*, 328 F.3d 655, 660-61 (D.C. Cir. 2003) (internal quotation marks omitted); *see also Douglas*, 482 F.3d at 596; *United States v. Bowie*, 232 F.3d 923, 929-30 (D.C. Cir. 2000); *United States v. Crowder*, 141 F.3d 1202, 1206 (D.C. Cir. 1998) (*en banc*); *United States v. Lawson*, 410 F.3d 735, 740 (D.C. Cir. 2005). As the D.C. Circuit has observed, "[o]nly one series of evidential hypotheses is forbidden in criminal cases by Rule 404: a man who commits a crime probably has a defect of character; a man with such a defect of character is more likely than men generally to have committed the act in question." *Miller*, 895 F.2d at 1436 (quoting 2 J. Weinstein & M. Berger, *Weinstein's Evidence* ¶ 404[8], at 404-52 (1989)); *see also United States v. Thorne*, No. CR 18-389 (BAH), 2020 WL 122985, at *5 (D.D.C. Jan. 10, 2020).

The proffered evidence is not offered to prove defendant's bad character, but to show his motive, intent, plan, and preparation behind his actions on January 6, 2021 in storming the Capitol while the Certification was scheduled.

### *Motive, Intent, and Plan*

Defendant's participation in the #StopTheSteal rally in Philadelphia shows his motive and intent on January 6, 2021 to disrupt the business of Congress, which was to certify the electoral vote, a vote that defendant claimed was illegal. Defendant made it clear in his interview on November 7, 2020 that he was protesting the 2020 Presidential election vote count on behalf of Donald Trump and that he, along with his fellow rioters, were going to "take our democracy back" and that they "do not have illegal votes. We count legal votes."  Defendant showed his frustration with the outcome of the 2020 Presidential election, culminating with him taking part in the January 6, 2021 riot to stop the certification of the electoral college votes. In his interview with the FBI on December 9, 2021 said he was "aware that our government is corrupt and the 2020 election was stolen through corrupt, nefarious deeds and acts." His purpose for assembling at the Capitol was because he claimed to know that the "election was stolen and that our republic had been robbed of it sovereign ability and privilege to vote honestly for our Commander-in-Chief."

While storming the Capitol grounds on January 6, 2021, defendant further expressed his anger over the election results by  joining rioters and yelling with them, "Fuck the Dems", an obvious protest to those who he claimed facilitated or casted the "illegal votes" against his candidate President Trump. Defendant also recorded rioters who were at the Senate Wing Door and who were screaming at the police, "Fight for Trump!", "Whose house? Our House. Defendant also yelled, "We want those fucking traitors!" Defendant's conduct confirms that his intention, motive, and plan was to disrupt the legal operation of the Government and stop the certification of

the electoral college vote because it included votes he thought were illegal and to which he complained of at the Stop the Steal rally immediately after the election.

### 2) Defendant's Prior Protest are Not Unduly Prejudicial

With respect to the second factor, the proffered evidence is not unfairly prejudicial. The D.C. Circuit has emphasized that exclusion of otherwise relevant evidence is not appropriate if the evidence is merely prejudicial; the prejudice must be "unfair." *See United States v. Cassell*, 292 F.3d 788, 796 (D.C. Cir. 2002) ("Virtually all evidence is prejudicial or it isn't material. The prejudice must be unfair.") (internal quotation marks omitted). In close cases, the rule tilts toward admission. *See United States v. Johnson*, 802 F.2d 1459, 1464 (D.C. Cir. 1986) ("[T]he balance should generally be struck in favor of admission when the evidence indicates a close relationship to the offense charged.") (internal quotation marks omitted). Unfair prejudice, within the context of Rule 403, means "an undue tendency to suggest decision on an improper basis, commonly, though not necessarily, an emotional one." *United States v. Ring*, 706 F.3d 460, 472 (D.C. Cir. 2013) (quoting Fed. R. Evid. 403 advisory committee's notes). The at-issue exhibit does not include anything likely to induce a rational juror to make a decision on an improper emotional basis, for instance, the video does not make defendant seem either mentally unstable or racist. *Cf. United States v. Fitzsimons*, No. 21-CR-158, 2022 WL 1658846, at *5 (D.D.C. May 24, 2022) (finding overly prejudicial a phone call and voicemail in which the defendant engaged in aggressive rants about the "deep state," made irrational demands, and expressed racial animus). The proffered evidence consists of defendant's voluntary interview regarding the protest he attended. There is nothing disturbing or shocking about it, and thus its prejudicial effect does not "substantially outweigh" its probative value.

In any case, any prejudice that may result from introduction of defendant's statement may be cured by a proper limiting instruction. As this Court has recognized, "[t]he D.C. Circuit has

consistently minimized the residual risk of prejudice [from 404(b) evidence] not by exclusion, but by issuing limiting instructions to the jury." *United States v. Young*, No. 12-CR-0042 (BAH), 2013 WL 12430550, at *6 (D.D.C. July 22, 2013) (citing cases). The Court can instruct the jury to consider evidence of the defendant's actions at prior protests only in relation to his motive, intent, knowledge, and lack of mistake or accident. When a clear limiting instruction is provided to a jury, "'it must be presumed that the jury conscientiously observed it.'" *Shotwell Mfg. Co. v. United States,* 371 U.S. 341, 367 (1963) (quoting *United States v. Harris*, 211 F.2d 656, 659 (7th Cir. 1954)). Accordingly, the Government submits that the Court should – consistent with the general rule of inclusion in such instances – permit testimony regarding this probative, relevant evidence, and guard against any undue prejudice by providing a limiting instruction.

## CONCLUSION

For the foregoing reasons, the Government respectfully requests the Court to permit the government to introduce, during its case-in-chief at trial, intrinsic act evidence inextricably intertwined with the charged offenses. In the alternative, the Government provides notice of its intent to introduce this "other acts" evidence to prove defendant's motive, intent, and plan in his actions during the riot at the U.S. Capitol on January 6, 2021. *See* Fed. R. Evid. 404(b)(2).

        Respectfully submitted,

        MATTHEW M. GRAVES
        UNITED STATES ATTORNEY
        D.C. Bar Number 481052

By:   /s/ Anthony L. Franks
       ANTHONY L. FRANKS
       Assistant United States Attorney
       Bar No. 50217MO
       555 Fourth Street, N.W., Room
       Washington, DC  20530
       anthony.franks@usdoj.gov
       (314) 539-3995

       /s/ Victoria A. Sheets
       VICTORIA A. SHEETS
       NY Bar No. 5548623
       Assistant United States Attorney
       U.S. Department of Justice
       601 D Street NW
       Washington, DC 20530
       (202) 809-2050
       Victoria.Sheets@usdoj.gov

**CERTIFICATE OF SERVICE**

I hereby certify that on October 26, 2022, I caused a copy of the foregoing motion to be served on counsel of record via electronic filing.

        /s/ Anthony L. Franks
        Anthony L. Franks
        Assistant United States Attorney