UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA : | |
| : | CASE NO. 21-CR-738 (BAH) |
| v. : | |
| : | |
| MICHAEL OLIVERAS, : | |
| : | |
| Defendant. : | |

### GOVERNMENT'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS COUNTS ONE AND TWO OF THE INFORMATION

Defendant, Michael Oliveras, asks this Court to dismiss Counts One and Two of the Information, charging him with entering and remaining in a restricted building or grounds, in violation of 18 U.S.C. § 1752(a)(1) (Count One), and disorderly and disruptive conduct in a restricted building or grounds, in violation of 18 U.S.C. § 1752(a)(2) (Count Two).

With respect to the Section 1752 charges – Counts One and Two – Oliveras argues that these charges fail to state an offense because the statute requires that the U.S. Secret Service designate the restricted area and that the government conceded in *United States v. Griffin* (21-cr-92) (TNM) that the Capitol Police had designated the restricted area. The latter assertion is not only erroneous but ultimately irrelevant because the statute does not require that the Secret Service establish the restricted area, and at least four district judges of this Court have agreed. Oliveras also argues that the Vice President cannot "temporarily visit" the U.S. Capitol. This argument too defies the plain text and history of the statute. *See, e.g.*, *United States v. McHugh*, No. 21-cr-453, 2022 WL 296304, at *18-20 (D.D.C. Feb. 1, 2022) (Bates, J.).

This Court should deny Oliveras's motion to dismiss.

### PROCEDURAL BACKGROUND

On December 9, 2021, Oliveras was charged by complaint for his actions on January 6,

1

2021, when large crowds breached the U.S. Capitol Building as Congress convened a Joint Session to certify the Electoral College vote in the 2020 Presidential Election. ECF No. 1. On December 16, 2021, the government filed an information, alleging that Oliveras violated 18 U.S.C. § 1752(a)(1) by entering and remaining in a restricted building or ground (Count 1), and 18 U.S.C. § 1752(a)(2), for engaging in disorderly and disruptive conduct in a restricted building or grounds (Count 2).

## FACTUAL BACKGROUND

At 1:00 p.m., on January 6, 2021, a Joint Session of the United States Congress, consisting of the House of Representatives and the Senate, convened in the Capitol Building. The Joint Session assembled to debate and certify the vote of the Electoral College of the 2020 Presidential Election. With the Joint Session underway and with Vice President Mike Pence presiding, a large crowd gathered outside the U.S. Capitol. At approximately 2:00 p.m., certain individuals in the crowd forced their way through, up, and over the barricades and officers of the U.S. Capitol Police, and the crowd advanced to the exterior façade of the building. Members of the U.S. Capitol Police attempted to maintain order and keep the crowd from entering the Capitol; however, shortly after 2:00 p.m., individuals in the crowd forced entry into the U.S. Capitol, including by breaking windows. Shortly thereafter, at approximately 2:20 p.m., members of the United States House of Representatives and United States Senate, including the President of the Senate, Vice President Mike Pence, were instructed to – and did – evacuate the chambers.

Michael Oliveras, of New Jersey, was initially identified as being in the Capitol Building by an online tip provided to the FBI. The tipster identified Oliveras and attached screenshots of his Parler account, explaining that Oliveras had "been talking about overthrowing the government for weeks in public chat rooms pushing disinformation and talking about hanging and executing people repetitively." The FBI was able to locate Oliveras's Parler account, which showed a video

that appeared to have been taken inside the Capitol building on January 6, 2021. Oliveras had also posted a video showing broken news media equipment, with a narrator (believed to be Oliveras) stating, "That's what happens when the fucking fake news shows up at a Patriot rally." There was another video posted on Oliveras's Parler account, showing individuals inside the Capitol building, while a person (again, believed to be Oliveras) narrated statements like, "Where are the fucking traitors? Drag them out by the fucking hair. Where are the fucking traitors?"

## LEGAL STANDARD

A defendant may move before trial to dismiss an information, or a count thereof, for "failure to state an offense." *See* Fed. R. Crim. P. 12(b)(3)(B)(v). An indictment's (or, in the case of a misdemeanor, an information's) main purpose is to inform the defendant of the nature of the accusation. *United States v. Ballestas*, 795 F.3d 138, 148-49 (D.C. Cir. 2015). Thus, an indictment need "only contain 'a plain, concise, and definite written statement of the essential facts constituting the offense charged.'" *Id.* at 149 (quoting Fed. R. Crim. P. 7(c)). "When testing the sufficiency of the charges in an indictment, 'the indictment must be viewed as a whole and the allegations [therein] must be accepted as true.'" *United States v. Hillie*, 227 F. Supp. 3d 57, 71 (D.D.C. 2017) (quoting *United States v. Bowdoin*, 770 F. Supp. 2d 142, 145 (D.D.C. 2011)). The "key question" is whether "the allegations in the indictment, if proven, are sufficient to permit a petit jury to conclude that the defendant committed the criminal offense as charged." *Id.* Additionally, this Court has cited to *Ballestas* for the premise that the court's power to dismiss an indictment "directly encroaches upon the fundamental role of the grand jury." *United States v. DeCarlo et al.* (21-cr-73) (BAH), ECF No. 66, at 31.

# ARGUMENT

I. **The Court Should Deny Oliveras's Motion to Dismiss Counts One and Two, Alleging Violations of 18 U.S.C. § 1752**

Counts One and Two allege violations of Section 1752 of Title 18, which prohibits the unlawful entry into and disruptive or disorderly conduct in a "restricted buildings or grounds." A "restricted building or grounds" is a "posted, cordoned off, or otherwise restricted area . . . where the President or other person protected by the Secret Service is or will be temporarily visiting." 18 U.S.C. § 1752(c)(1)(B). At the time the defendant entered the U.S. Capitol on January 6, 2021, the Vice President was present. Oliveras's conduct accordingly falls within the Section 1752's plain sweep because he unlawfully entered a restricted building while the Vice President was "temporarily visiting," as alleged in the indictment.

   A. **18 U.S.C. § 1752 Does Not Require The Government To Prove That The Restricted Area Was Restricted At The Secret Service's Direction**

Oliveras argues that because the Capitol Police, not the Secret Service, barricaded the area around the Capitol, he should not be charged with violating 18 U.S.C. § 1752(a)(1) and (2). ECF No. 35 at 3-5. Courts in this district have rightly rejected this contention. *See, e.g.*, *Griffin*, 2021 WL 2778557; *Mostofsky*, 2021 WL 6049891, at *12–*13, *Nordean,* 2021 WL 6134595, at *18; *McHugh,* 21-cr-453, ECF No. 51, at 38–40.

In relevant part, 18 U.S.C. § 1752 ("Restricted building or grounds") prohibits the unlawful entry into a restricted or otherwise cordoned off area where "a person protected by the Secret Service is or will be temporarily visiting." *Wilson v. DNC Servs. Corp.*, 417 F. Supp. 3d 86, 98 (D.D.C. 2019), *aff'd* 831 Fed. App'x 513 (D.C. Cir. 2021). Section 1752 therefore "focuses on perpetrators who knowingly enter a restricted area around a protectee, not on how it is restricted or who does the restricting." *Griffin*, 2021 WL 2778557, at *6.

To determine the meaning of a statute, the Court "look[s] first to its language, giving the

4

words used their ordinary meaning." *Levin*, 568 U.S. at 513 (quoting *Moskal*, 498 U.S. at 108); *see also Pub. Investors Arbitration Bar Ass'n v. S.E.C.*, 930 F. Supp. 2d 55 (D.D.C. 2013). Here, the plain text of the statute is "unambiguous," so the "judicial inquiry is complete." *Babb*, 140 S. Ct. at 1177. Section 1752's text is clear. It proscribes certain conduct in and around "any restricted building or grounds." *See* 18 U.S.C. § 1752(a). The statute provides three definitions for the term "restricted buildings and grounds," *see* § 1752(c)(1), including "any posted, cordoned off, or otherwise restricted area . . . of a building or grounds where the President or other person protected by the Secret Service is or will be temporarily visiting," § 1752(c)(1)(B). Through a cross-reference, Section 1752 makes clear—and Oliveras does not appear to dispute—that "person[s] protected by the Secret Service" includes the Vice President. 18 U.S.C § 1752(c)(2); *see* § 3056(a)(1).

That straightforward analysis has a straightforward application to the facts alleged in the defendant's case. The information alleges that a protected person (the Vice President) was present inside the Capitol building or on the Capitol grounds, and that some portion of the Capitol building and grounds was posted, cordoned off, or otherwise restricted—making it a "restricted building or grounds" under § 1752(c)(1). In short, the allegations closely track the statutory language.

Oliveras urges the Court to import an extra-textual requirement that the Secret Service be required to designate the restricted area. ECF No. 35 at 4-5. However, there is nothing in the statute itself that addresses who must do the restricting. This makes perfect sense when considering that Section 1752 is directed not at the Secret Service, but at ensuring the protection of the President and the office of the Presidency. *See* S. Rep. 91-1252 (1970); *see also* Elizabeth Craig, *Protecting the President from Protest: Using the Secret Service's Zone of Protection to Prosecute Protesters*, 9 J. Gender Race & Just. 665, 668–69 (2006). "Indeed, the only reference in the statute to the Secret Service is to its protectees. Section 1752 says nothing about who must do the

5

restricting." *Griffin*, 2021 WL 2778557, at *7; *see also Mostofsky*, 2021 WL 6049891 at *13 ("The text plainly does not require that the Secret Service be the entity to restrict or cordon off a particular area."). "If Congress intended a statute designed to safeguard the President and other Secret Service protectees to hinge on who outlined the safety perimeter around the principal, surely it would have said so." *Griffin*, 2021 WL 2778557, at *6. Oliveras's reading would have the Court create a "potentially massive procedural loophole" from the statute's "silence." *McHugh,* 21-cr-453, ECF No. 51, at 40. The Court should not do so.

Statutory history also undercuts defendant's argument. *See id.* at *4-*5 (explaining how Congress has consistently "*broadened* the scope of the statute and the potential for liability"). While the earlier version of Section 1752 also did not say who must restrict a building or grounds, it did incorporate regulations promulgated by the Department of the Treasury (which at the time housed the Secret Service) governing restricted areas. *Id*. Oliveras falsely conflates the Treasury's Department's authority to promulgate certain regulations with a requirement that the Secret Service cordon off areas; but, even so, Congress subsequently struck subsection (d) and did not replace it with language limiting the law enforcement agencies allowed to designate a restricted area. Pub. L. 109-177, Title VI, Sec. 602, 120 Stat. 192 (Mar. 9, 2006). Its decision in 2006 to eliminate reference to the Treasury Department (without replacing it with the Department of Homeland Security, which currently houses the Secret Service) indicates that the statute no longer depends (if it ever did) on whether the Secret Service has defined an area as "restricted."

Oliveras also erroneously argues that the government conceded in *United States v. Griffin* (21-cr-92) (TNM) that the U.S. Capitol Police designated the restricted area. ECF No. 35 at 5. To the contrary, in *Griffin*, government witnesses testified that the Capitol Police established the restricted area in communication with the Secret Service, and that the Secret Service had the power to institute changes. But in any case, Oliveras's argument is ultimately irrelevant because, as stated

6

above, the statute does not require that the Secret Service establish the restricted area, as at least four district judges of this Court have found.

### B. The Vice President Can "Temporarily Visit" The U.S. Capitol

Contrary to Section 1752's plain terms, purpose, and structure, Oliveras argues that Vice President Pence cannot "temporarily visit" the U.S. Capitol because he has an office there. ECF No. 35 at 6-8. Oliveras contends that his reading of the statute is commonsense. As Judge Bates has held, this is incorrect. *McHugh,* 21-cr-453, ECF No. 51, at 42–47 (reaching "a commonsense conclusion: the Vice President was 'temporarily visiting' the Capitol"); *see also see also United States v. Andries*, 2022 WL 768684, at *16 (D.D.C. Mar. 14, 2022) (Contreras, J.) ("Vice President Pence was 'temporarily visiting' the Capitol on January 6, 2021 if he went to the Capitol for a particular purpose, including a business purpose, and for a limited time only. Plainly he did. He went to the Capitol for the business purpose of carrying out his constitutionally assigned role in the electoral count proceeding; he intended to and did stay there only for a limited time."); *United States v. Puma*, 21-cr-454, 2022 WL 823079, at *17 (D.D.C. Mar. 19, 2022) (Friedman, J.) (holding that under the plain language of Section 1752, the Vice President "was temporarily visiting the Capitol on January 6, 2021: he was there for a limited time only in order to preside over and participate in the Electoral College vote certification").

As noted above, to determine the meaning of a statute, the Court "look[s] first to its language, giving the words used their ordinary meaning." *Levin*, 568 U.S. at 513 (quoting *Moskal v. United States*, 498 U.S. 103, 108 (1990)). The verb "visit" means, *inter alia,* "to go to see or stay at (a place) for a particular purpose (such as business or sightseeing)" or "to go or come officially to inspect or oversee."[2]

Either definition describes the Secret Service protectee's activities on January 6. Vice President Pence was physically present at the U.S. Capitol for a particular purpose: he presided

7

over Congress's certification of the 2020 Presidential Election, first in the joint session, and then in the Senate chamber. While not specifically alleged in the information, two other Secret Service protectees (members of the Vice President's immediate family), also came to the U.S. Capitol that day for a particular purpose: to observe these proceedings. Furthermore, as President of the Senate, Vice President Pence oversaw the vote certification. Given the presence of the Vice President (and his family members), the U.S. Capitol plainly qualified as a building where "[a] person protected by the Secret Service [was] . . . temporarily visiting." 18 U.S.C. § 1752(c)(1)(B).

Oliveras emphasizes Section 1752's use of the term "temporarily" and cites cases where either the President or Vice President were "traveling *outside* of the District of Columbia 'visiting' that area for a 'temporary' purpose." ECF No. 39 at 8. Section 1752, however, does not impose a requirement that the location being temporarily visited be outside of the District of Columbia. Second, the visit to the U.S. Capitol *was* temporary: Vice President Pence (and his family) had traveled to the U.S. Capitol to oversee and attend the Joint Session of Congress—a proceeding of limited duration. At the close of the proceeding, they left—confirming the "temporary" nature of their visit. *See McHugh*, 21-cr-453, ECF No. 51, at 43 (citing various dictionary definitions of "temporary" as "for a limited time" and finding that the Vice President can "temporarily visit" the U.S. Capitol).

Oliveras offers two further observations—both irrelevant. First, he notes that Vice President Pence "lived and worked" in the District of Columbia. ECF No. 35 at 7. But Section 1752(c)(1)(B) defines the restricted area by reference to "buildings or grounds," not municipal borders. That Vice President Pence lived and worked in Washington, D.C. does not detract from the fact that he "temporarily visit[ed]" the U.S. Capitol on January 6. "Simply being in the visitor's hometown does not mean a place cannot be 'visited.'" *McHugh*, 21-cr-453, ECF No. 51 at 44. Second, the defendant stresses that Vice President Pence had a permanent U.S. Capitol office. ECF

No. 35 at 7-8.  Section 1752(c)(1)(B), however, defines the restricted area by reference to the location of the protectee—not his office.  When Vice President Pence traveled to the U.S. Capitol on January 6 to oversee the Joint Session of Congress, he was "visiting" the building.  And because Vice President Pence intended to leave at the close of the session, this visit was "temporar[y]."  Moreover, the U.S. Capitol is not the Vice President's regular workplace; even if "there is some carveout in § 1752 for where a protectee normally lives or works, it does not apply to Vice President Pence's trip to the Capitol on January 6, 2021."  *McHugh*, 21-cr-453, ECF No. 51, at 46.

Such a "carveout," taken to its logical end, would undermine the government's ability to protect the President and Vice President by deterring and punishing individuals who seek unauthorized access to the President's or Vice President's location.  It would restrict Section 1752(c)(1)(B)'s application to only locations outside the District of Columbia—on the view that any visit by the President or Vice President to a location within municipal limits cannot be "temporary" because they reside in the District of Columbia.  Second, under the defendant's construction, Section 1752(c)(1)(B) would not apply where the President or Vice President temporarily stayed at their permanent residences in Delaware or California—on the view that such a trip would not qualify as "visiting."  Nor would it apply to Camp David, where there is a presidential cabin and office.  In another strange scenario, a restricted area could exist when, as here, the Vice President's family visits the Capitol (because they are Secret Service protectees without an office there), but not when the Vice President does, affording a higher level of protection for the family of the elected official than to the elected official himself (or herself).  No support exists for Oliveras's effort to insert such large and irrational exceptions into the statute's sweep.  *See Lovitky v. Trump*, 949 F.3d 753, 760 (D.C. Cir. 2020) (explaining that courts will avoid a "statutory outcome … if it defies rationality by rendering a statute nonsensical or superfluous or if it creates an outcome so contrary to perceived social values that Congress could not have intended

it") (citation omitted).

Oliveras's position also defies Section 1752's clear purpose. *Cf. Genus Med. Techs. LLC v. United States Food & Drug Admin.*, 994 F.3d 631, 637 (D.C. Cir. 2021) ("[I]f the text alone is insufficient to end the inquiry, we may turn to other customary statutory interpretation tools, including structure, purpose, and legislative history.") (internal quotation marks and citation omitted). In drafting Section 1752, Congress sought to protect "not merely the safety of one man, but also the ability of the executive branch to function in an orderly fashion and the capacity of the United States to respond to threats and crises affecting the entire free world." *United States v. Caputo*, 201 F. Supp. 3d 65, 70 (D.D.C. 2016) (quoting *White House Vigil for ERA Comm. v. Clark*, 746 F.2d 1518, 1528 (D.C. Cir. 1984)). To that end, the statute comprehensively deters and punishes individuals who seek unauthorized access to the White House grounds and the Vice President's residence—fixed locations where the President and Vice President live and work, 18 U.S.C. 1752(c)(1)(A); and also any other "building or grounds" where they (or other protectees) happen to be "temporarily visiting," 18 U.S.C. 1752(c)(1)(B). Reading Sections 1752(c)(1)(A) and 1752(c)(1)(B) together protects the President and Vice President in their official homes and wherever else they go. Interpreting the statute as the defendant suggests would create a gap in Section 1752's coverage by removing areas, such as the U.S. Capitol, from protection. It could expose the leaders of the Executive Branch even as they perform their official duties. That gap is both illogical and contrary to the statutory history of Section 1752, where, "at every turn," Congress has "*broadened* the scope of the statute and the potential for liability." *Griffin,* 2021 WL 2778557, at *5 (D.D.C. July 2, 2021).

All the relevant metrics—plain language, statutory structure, and congressional purpose—foreclose the defendant's crabbed reading of Section 1752(c)(1)(B). This Court should reject it. Oliveras's cited cases—involving either an arrest or conviction under Section 1752—do not

discuss the "temporarily visiting" language. ECF No. 35 at 8 (citing *United States v. Bursey*, 416 F.3d 301 (4th Cir. 2005); *United States v. Junot,* 1990 WL 66533 (9th Cir. May 18, 1990) (unpublished); *Blair v. City of Evansville, Ind.,* 361 F. Supp.2d 846 (S.D. Ind. 2005)). They lack relevance to the present dispute.

## **CONCLUSION**

The Court should deny Oliveras's motion to dismiss Counts One and Two of the Information for the reasons stated above.

Respectfully submitted,

MATTHEW M. GRAVES
UNITED STATES ATTORNEY
D.C. Bar No. 481052

By:     /s/
Ashley Akers
Trial Attorney
U.S. Department of Justice
Detailed to the D.C. U.S. Attorney's Office
601 D Street, N.W.
Washington, D.C. 20530
(202) 353-0521
Ashley.Akers@usdoj.gov


VICTORIA A. SHEETS
Assistant United States Attorney
NY Bar No. 5548623
601 D Street NW
Washington, DC 20530
(202) 252-7566
Victoria.sheets@usdoj.gov

Dated: November 16, 2022

## CERTIFICATE OF SERVICE

On November 16, 2022, a copy of the foregoing was served on counsel of record for the defendant via the Court's Electronic Filing System.

                                                  /s/ *Ashley Akers*
                                                  ASHLEY AKERS
                                                  Trial Attorney
                                                  Capitol Riot Detailee