# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **UNITED STATES OF AMERICA** | |
| **v.** | **Case No. 21-cr-738 (BAH)** |
| **MICHAEL OLIVERAS,** | |
| **Defendant.** | |

## GOVERNMENT'S SUPPLEMENTARY SENTENCING MEMORANDUM

The United States of America, by and through its attorney, the United States Attorney for the District of Columbia, respectfully submits this supplementary memorandum in connection with the above-captioned matter.

On March 3, 2024, the government filed its sentencing memorandum in this matter, recommending a sentence of 68 months of incarceration, an upward variance from the advisory guideline range of 37-46 months. *See* ECF No. 106. Since that memorandum was filed, sentencing has been continued several times, and there have been additional factual and legal developments relevant to sentencing in January 6 cases. Accordingly, the government submits this supplementary memorandum, providing additional justification for its recommended sentence.

### I.      Dismissal of Count Two Has No Impact On The Advisory Guidelines Range

In light of the Supreme Court's decision in *United States* v. *Fischer*, — S.Ct. — (2024), the government has filed a motion to dismiss Count Two of the Superseding Indictment. *See* ECF No. 126. But the dismissal of Count Two does not change the advisory sentencing guideline range:

The revised presentence report identifies two groups, with Adjusted Offense Levels of 20

1

and 14:

| Group/Count | Adjusted Offense | Level Units |
|---|---|---|
| Group 1 [Counts 1, 3] | 20 | 1.0 |
| Group 2 [Counts 2, 4 & 5] | 14 | 0.5 |
| **Total Number of Units:** | | 1.5 |

ECF No. 104 (PSR) at ¶ 65a. With the dismissal of Count Two, Group 2 now consists of Counts 4 and 5, and continues to have an adjusted offense level of 14. *See* ECF No. 104 (PSR) at ¶ 52, n.6; ECF No. 106 at 23. The grouping analysis is therefore:

| Group/Count | Adjusted Offense | Level Units |
|---|---|---|
| Group 1 [Counts 1 & 3] | 20 | 1.0 |
| Group 2 [Counts 4 & 5] | 14 | 0.5 |
| **Total Number of Units:** | | 1.5 |

As the PSR indicates, under U.S.S.G. § 3D1.4(a), (b), one unit is assigned to the group with the highest offense level and one-half unit is assigned to any group that is 5 to 8 levels less serious than the highest offense level. Thus, in this case, one unit is assigned to Group 1 and one-half unit is assigned to Group 2. The total number of units is 1.5. The Sentencing Guidelines dictate that the offense level is increased pursuant to the number of units assigned by the amount indicated in the table at U.S.S.G. § 3D1.4. Here, that is +1. Therefore, the combined adjusted offense level, which is determined by taking the offense level applicable to the Group with the highest offense level and increasing the offense level by the amount indicated in the table at U.S.S.G. § 3D1.4, continues to be **21**.

## II.     Additional Facts Relevant to the 18 U.S.C. § 3553(a) Sentencing Factors

After violating his release conditions, *see* Minute Order (5/3/24), the defendant was detained pending sentencing. Since that time, Oliveras has been a regular contributor to a public

streaming channel that airs on Youtube, "1791 storm trooper."[1]  The defendant's recent statements on this channel further demonstrate his continued lack of remorse and refusal to accept responsibility for his actions, increasing the need for a significant sentence to deter Oliveras from engaging in future political violence. *See* ECF No. 106 at 32-33.

For example, Oliveras has made the following statements:

| Date | Link | Summary of Michael Oliveras' Statements |
|------|------|------------------------------------------|
| 5/8/2024 | https://www.youtube.com/watch?v=fS47vYc_7qw [2] | Oliveras' segment begins at 1:51:00.<br><br>1:54:20: background on arrest and charges<br><br>1:57:31 to 1:58:08: "But, listen, at this point, I got news for everybody, and I've got news for the DOJ and I've got news for everybody involved in all of this bullshit whose acting nefariously towards us and anyone involved, I've got news for you: **it's a badge of honor**. I didn't go down there to destroy anything, to hurt anybody, cause a ruckus or anything like that, more than any of my brothers for the most part. And what happened, happened. Most of us got caught up in the fray. **And I'd do it again.**"<br><br>1:58:09 to 1:58:39: After the host warned Oliveras not to say anything else because he was on a live stream, which was recorded and could be used in his |

---

[1] *See* https://www.youtube.com/@stormtrooper-hw4cd/videos.
[2] *See also* https://www.washingtonpost.com/elections/2024/06/14/trump-jan6-attack-pardons/.

| | | |
|---|---|---|
| | | upcoming sentencing, and warned Oliveras not to make any more statements about his case, Oliveras responded, "**I'm not worried.**" |
| 6/14/2024 | https://www.youtube.com/watch?v=y1H55KSsgew | Oliveras' segment begins at 55:39.<br><br>1:01:49: Oliveras claims that he is "looking forward to sentencing" because it is scheduled for the same day as the former president's sentencing, who he repeatedly refers to as "our commander-in-chief."<br><br>1:06:15: "It is an h**onor for me to be a J6 defendant – I wouldn't have it any other way.** I know why I was there. I was there for the right reasons, and there's **nobody's that ever gonna get me to admit and say I'm sorry. I didn't do anything wrong and I'd do it again.**" |

### III.     Upward Departure or Variance Remains Appropriate

The government's original sentencing memorandum set forth its reasons for seeking an upward variance or departure. ECF No. 106 at 24-28. Developments since that memorandum was filed, including Oliveras's recent statements and the *Fischer* decision have added to the grounds supporting an upward variance.

As the government explained in its original sentencing memorandum, defendant was an avid and willing participant in an unprecedented crime. He joined a mob that threatened the lives of legislators and their staff, interrupted of the certification of the 2020 Electoral College vote

count, injured more than one hundred police officers and resulted in more than 2.9 million dollars in losses. His offense targeted the peaceful transfer of power, an essential government function, and one of the fundamental and foundational principles of our democracy. Like every member of the mob, [Defendant] "endanger[ed] our democratic processes and temporarily derail[ed] Congress's constitutional work." *United States v. Brock*, 94 F.4th 39, 59 (D.C. Cir. 2024). As Judge McFadden put it to another rioter, "[Y]ou and your fellow rioters were responsible for substantially interfering with the certification, causing a multiple-hour delay, numerous law enforcement injuries and the expenditure of extensive resources." *United States v. Hale-Cusanelli*, 21-cr-37 (TNM), Sent'g Tr. 9/22/22 at 86-87.

It is not hyperbole to call what happened on January 6 a crime of historic magnitude. As judges of this district have repeatedly and clearly stated, January 6 was an unprecedented disruption of the nation's most sacred function—conducing the peaceful transfer of power. "The events that occurred at the Capitol on January 6th will be in the history books that our children read, our children's children read and their children's children read. It's part of the history of this nation, and it's a stain on the history of this nation." *United States v. Miller*, 21-CR-75-RDM, Sent. Tr., at 67. But just as the history books will describe the crimes of January 6, so will they tell the story of how this nation responded. Future generations will rightly ask what this generation did to prevent another such attack from occurring. The damage done to this country on January 6 must be reflected in the sentences imposed on those who caused the damage—it must not be treated as just another crime.

But nothing in Oliveras' Guidelines calculation now reflects these facts. Oliveras would face the same offense level if his crimes had not endangered the democratic process or interfered

with the peaceful transfer of power.[3]  There is no specific offense characteristic in the Guidelines for attacking democracy or abandoning the rule of law. "And simply saying, yeah, I know I trespassed, I trespassed, that's not really capturing the impact of what that day meant when all of those members of Congress met there to fulfill their constitutional duty." *United States v. Calhoun*, 21-CR-116-DLF, Sent. Tr. at 85. So a sentence within the defendant's Guidelines range here would not "reflect the seriousness of the offense," "promote respect for the law," or "provide just punishment for the offense." 18 U.S.C. § 3553(a)(2)(A).

As the government noted before, the Guidelines expressly state that an upward departure is warranted where a case presents a circumstance that "may not have been adequately taken into consideration in determining the applicable guideline range" or that "the Commission has not identified in the guidelines but that nevertheless is relevant to determining the appropriate sentence." U.S.S.G. § 5K2.0(a)(2). The Guidelines also provide that a departure is warranted when an offense results in "a significant disruption of a governmental function" and the Guidelines do not reflect the appropriate punishment for the offense. U.S.S.G. § 5K2.7.[4]  Indeed, even before *Fischer*, judges of this Court gave significant upward departures and/or variances in January 6

---

[3]  The D.C. Circuit's holding in *United States v. Brock*, 94 F.4th 39 (D.C. Cir. 2024), finding that certain sentencing enhancements did not apply to the Congress's counting and certification of the electoral college votes, despite acknowledging that interference with this process "no doubt endanger[ed] our democratic process and temporarily derail[ed] Congress's constitutional work" demonstrates that the Sentencing Commission failed to anticipate anything like the January 6 riot when drafting the Guidelines. And the Supreme Court's recent decision in *United States v. Fischer*, -- S.Ct. -- (2024) demonstrates that even the criminal code lacks the appropriate tools to fully address the crimes of January 6. *See Fischer*, slip op. at 29 (Barrett, J., dissenting) ("Who could blame Congress for [its] failure of imagination?").

[4]  This guideline does not require the government to establish a direct link between the defendant's misconduct and the alleged disruption, nor does it "require that the disruption be of any particular type or consequence."   *See United States v. Saani*, 650 F.3d 761, 765–66, 771 (D.C. Cir. 2011).

cases when they found the advisory guideline range inadequate. *See, e.g.*, *United States v. Hale-Cusanelli*, 21-CR-37-TNM, 9/22/22 Sent. Tr.; *United States v. Christian Secor*, 21-CR-157-TNM, 10/19/22 Sent. Tr.; *United States v. Hunter and Kevin Seefried*, 21-CR-287-TNM. 10/24/22 Sent. Tr.; *United States v. William Watson*, 21-CR-513-RBW, 3/9/23 Sent. Tr.; *United States v. Riley Williams*, 21-CR-618-ABJ, 3/23/23 Sent. Tr.; *United States v. Hatchet Speed*, 22-CR-244-TNM, 5/8/23 Sent. Tr.

And since *Fischer* was decided, this Court, as well as other judges of this district, have upwardly departed in January 6 cases precisely because in a post-*Fischer* world, the advisory guideline range did not adequately take into account all of the relevant circumstances. *See United States v. Eicher*, 22-cr-38 (BAH), Sent. Tr. 9/15/23 at 50 (applying § 5K2.7 because the defendant "join[ed] a mob, in the center of the melee, and through the sheer numbers and aggressive conduct towards police, breached the Capitol resulting in stopping the legitimate business of Congress for hours"); *United States v. Black*, 21-CR-127-ABJ, Sent. Tr. 5/16/23 at 27 (applying an upward departure pursuant to § 5K2.7 for a January 6 rioter).

Recently, in *United States v. Sparks*, 21-CR-87-TJK, Judge Kelly sentenced a defendant convicted of violating both 18 U.S.C. § 1512(c)(2) and 18 U.S.C. § 231. Prior to sentencing, in light of the Supreme Court's *Fischer* decision, the government moved to dismiss the § 1512(c)(2) count, and at sentencing, Sparks faced an advisory guideline range of 15-21 months. Judge Kelly found it important that despite the dismissal of the § 1512(c)(2) count, the defendant's conduct still included "an intent to obstruct or interfere with that proceeding, that important constitutional proceeding" which the court found to be "pretty dark behavior" which "posed a threat to whether our constitutional process will proceed or whether a mob would interfere with that process." *Sparks*

Sentencing Tr. (attached as Attachment A), at 87-88. The court found that the "typical person convicted of [18 U.S.C. § 231] engaged in nothing at all like the attack on the Capitol and the certification." *Id.* at 94-95. Because Sparks' advisory guideline range was driven by the § 231 conviction, that range did not "account for the defendant's intent to obstruct, not just law enforcement officers doing their duty under that statute, but a proceeding, or for the purposes of [U.S.S.G. §] 5K2.7, a governmental function. And not any proceeding, but one foundational to our country's governance." *Id.* at 93. The court found Sparks' intent to "interfere or obstruct with the electoral college vote certification . . . plays an important role in explaining why" Sparks' advisory guideline range did not fully account for his criminal conduct. *Id.* at 94. Accordingly, the court found a significant upward departure was warranted under both U.S.S.G. §§ 5K2.7 and § 5K2.21, and in the alternative a variance of equal amount was warranted under the § 3553(a) factors, and sentenced Sparks to 53 months of imprisonment.

Similarly, in *United States v. Robertson*, 21-CR-34-CRC, Judge Cooper resentenced a defendant after dismissal of a § 1512(c)(2) conviction post-*Fischer*. Without that conviction, the court determined that a new advisory guideline range of 37 to 46 months applied. *See Robertson* Sent. Tr., at 59. But the court also found that an upward departure was appropriate pursuant to U.S.S.G. § 5K2.7, because Robertson's conduct "resulted in a significant disruption of a governmental function, namely halting of the certification . . . and that is so regardless of whether Section 1512(c) applies." *Id*. at 61. The court also found an upward departure appropriate under U.S.S.G. § 5K2.0 because Robertson's conduct was "more harmful or egregious than the typical case represented by the otherwise applicable guideline range." *Id*. After considering the § 3553(a) factors, Judge Cooper sentenced Robertson to 72 months of imprisonment.

And in *United States v. Dunfee*, 23-CR-36-RBW, Judge Walton sentenced a defendant on a § 231 conviction and a misdemeanor, after his § 1512(c)(2) conviction was dismissed in light of *Fischer*. Judge Walton found an upward departure was warranted under U.S.S.G. § 5K2.7, because Dunfee's actions contributed to and resulted in a significant disruption of the certification of the electoral college vote. Moreover, noting that "the Sentencing Commission did not contemplate the circumstances that occurred on January 6," the court also found that a departure was warranted under U.S.S.G. § 5K2.0(2) because Dunfee's criminal conduct related to "the attempt by a large number of individuals, including the defendant, to stop the peaceful transfer of power." *See United States v. Dunfee*, 23-CR-36-RBW, ECF No. 90, at 2. From an advisory range of 18-24 months, the court sentenced Dunfee to 30 months of imprisonment.

Because the seriousness of defendant's crime is not adequately captured by the applicable Guideline, an upward departure is appropriate here as well. If the Court declines to depart, an upward variance is warranted. An upward variance is appropriate when "the defendant's conduct was more harmful or egregious than the typical case represented by the relevant Sentencing Guidelines range." *United States v. Murray*, 897 F.3d 298, 308–09 (D.C. Cir. 2018) (cleaned up). While the Supreme Court's decision in *Fischer* has changed defendant's advisory Guideline range, "*Fischer* does not dictate the Court's application of the 18 U.S.C. 3553(a) factors [because] the Court may still consider [defendant's] serious conduct on January 6th, 2021 in its entirety. To reduce [defendant's] sentence . . . would require this Court to take a drastically different view of [defendant's] conduct." *United States v. Hostetter*, 21-CR-392-RCL, ECF 507, at 4-5 (cleaned up). Indeed, "*Fischer* does not mean that I cannot consider at sentencing evidence that establishes that the defendant intended to obstruct Congress' certification of the electoral vote in determining

whether . . . the resulting guideline range fully accounts for the criminal conduct." *Sparks* Sentencing Tr. at 95. *See also United States v. Kelly*, 21-CR-708-RCL, ECF 151, at 5 ("Nothing about *Fischer* or any hypothetical outcome of [defendant's] appeal bears directly on the severity of his conduct on January 6th . . . . Likewise, the outcome in *Fischer* would not dictate the Court's application of the sentencing factors prescribed in 18 U.S.C. § 3553(a)"); *United States v. Jensen*, 21-CR-6-TJK, Sent. Tr. at 16 ("given the importance and the significance of the proceeding of certifying the Electoral College votes, I would vary upward -- even if this [sentencing enhancement] didn't apply, I would vary upward when considering the nature of the offense."),

Also unprecedented is the need for January 6 sentences to promote respect for the law and deter future crime. *See* 18 U.S.C. § 3553(a)(2)(A), (B). The January 6 rioters went far beyond merely breaking the law. "There is a difference between breaking the law and rejecting the rule of law." *See* Opening Remarks, January 6 Select Committee (Rep. Kinzinger).[5]

And the risk of another attack on the Capitol remains. "The heated and inflammatory rhetoric that brought the defendant to the District has not subsided. The lie that the election was stolen and illegitimate is still being perpetrated." *United States v. Cleveland*, 21-CR-159-ABJ, Sent. Tr. at 94-95. And as discussed above, Oliveras continues to show both a lack of remorse and an eagerness for future political violence. If we are to prevent another January 6 and restore respect for the rule of law, sentences in these cases must send a message, and that message will not be conveyed by treating the January 6 riot as a run-of-the-mill offense.

Other courts in this district have varied upward from the advisory guideline range specifically because of the unique and serious nature of the crimes committed that day; this Court

---

[5] Available at https://www.cnn.com/2021/07/27/politics/read-kinzinger-remarks-0727/index.html

should do no less. *See United States v. Reffitt,* 21-CR-87-DLF, Mem. Op. and Order 4/10/24 at 10–11 (upward variance would be justified because "as other judges in this district have noted, the proceedings at issue on January 6, 2021 were of much greater significance than run-of-the-mill 'judicial, quasi-judicial, and adjunct investigative proceedings'"); *United States v. Fonticoba*, 21-CR-368-TJK, Sent'g Tr. 1/11/24 at 66–67 (stating that, even if the defendant's § 1512 conviction were invalidated, a significant upward variance was warranted to account for the defendant's intent "to obstruct the proceeding and the nature of the proceeding itself"); *United States v. Secor*, 21-CR-157-TNM, Sent. Tr. 10/19/22 at 53 ("I believe both the seriousness of the event — you obstructed the certification of an official proceeding — and your particular role in it . . . require a significant upward variance").

For all of those reasons, as well as the reasons set forth in the government's March 2024 sentencing memorandum, an upward departure or variance to 68 months is appropriate.

Respectfully submitted,

DATED: September 26, 2024

MATTHEW M. GRAVES
United States Attorney
D.C. Bar No. 481052

By: /s/ Ashley Akers
ASHLEY AKERS
MO Bar No. 69601
Trial Attorney, Detailee
601 D Street NW
Washington, DC 20001
(202) 353-0521
Ashley.Akers@usdoj.gov

VICTORIA A. SHEETS

Assistant United States Attorney
NY Bar No. 5548623